## MINER *v.* MARKHAM. (Two Cases.)

### *(Circuit Court, E. D. Wisconsin.* August 9, 1886.)

1. WRIT AND PROCESS—EXEMPTION FROM SERVICE—MEMBER OF CONGRESS—SECTION 6 OF ARTICLE 1 OF CONSTITUTION OF THE UNITED STATES CONSTRUED.

    Under section 6 of article 1 of the constitution of the United States a member of the house of congress is entitled to exemption from service of process, although not accompanied with arrest of the person, while on his way to attend a session of congress.

2. SAME—LIMITATIONS OF EXEMPTION ACCORDED MEMBERS OF CONGRESS.

    The privilege of a member of congress of exemption from arrest while going to attend a session of congress is limited to a reasonable time; it is not strictly confined to the exact number of days required for the journey, nor will it be forfeited for a slight deviation from the route which is most direct.

3. REMOVAL OF CAUSE—MOTION TO SET ASIDE A SERVICE OF SUMMONS.

    Where a defendant appears specially in the state court, both in his motion to set aside a service of summons and in his application for the removal of the case to the United States court, and the motion in the state court is denied without prejudice to a renewal of the same, the defendant has not waived his privilege, and can assert it in the United States circuit court with the same force and effect as if the suit had been brought and the motion made there in the first instance.

These were two suits begun in the state court, and removed to this court. The summons in each case was served on the defendant personally at Milwaukee on the twenty-eighth day of October, 1885. Before the removal of the cases to this court the defendant appeared specially therein, and moved to set aside the service of the summons in each action on the ground that he was a member of congress, and at the time of such service was on his way from his residence in Cali-

fornia to Washington for the purpose of attending the next ensuing session of congress. The motion was overruled by the state court, but without prejudice to the right of the defendant to renew the motion in that or any any other court in which the cases should be thereafter pending. Thereupon the defendant, thereafter appearing in the cases for the purpose only of removing the same to this court, filed petitions in each suit for the removal of the same under the act of 1875, and the cases were duly removed. A new motion was then made in behalf of the defendant to quash the service of the summons in each action, upon the same ground as that upon which a similar motion was made in the state court; which motion was opposed and argued.

Affidavits filed in the cases in support of the motion showed that at the time of the service of process, and for a considerable time prior thereto, the defendant was a member of the congress of the United States, having been duly elected thereto as a representative from the Sixth congressional district of the state of California, and that he is a resident of the county of Los Angeles in that state. He alleged that at the time of the service of process upon him he was on his way to the city of Washington for the purpose of attending a session of the house of representatives, as a member thereof from the Sixth congressional district of California, and was at the time of such service, temporarily in the city of Milwaukee. He further stated, in his affidavit, that he left Los Angeles accompanied by his wife and four children, intending to proceed to Washington and there secure a suitable place of residence for himself and family during the session, and in time to arrange for and settle his family and household affairs there, prior to the date of the commencement of the session; that during his journey several of his children were ill, and by reason thereof he was obliged to stop at several places on his way to Washington; and further, that by reason of such illness he was being detained in Milwaukee at the residence of his brother at the time of the service of summons in said actions. He further states in his affidavit that he started from his residence in Los Angeles county to attend the session of congress only a reasonable length of time before the commencement of the session, and such as he considered proper and necessary under all the circumstances connected with the proper discharge of his duties as a representative in congress, and was proceeding on his way to attend the session without any unreasonable or unnecessary delay.

The affidavit of George C. Markham, brother of the defendant, stated that on the twenty-eighth day of October, 1885, when the summons was served, the defendant, with his wife and children, was stopping with him, and that at that time, and for some time prior thereto, the defendant's children were ill, and that by reason thereof the defendant was detained in Milwaukee on his way to the city of Washington with his family for the purpose of attending a session of the congress of the United States.

It was also shown by affidavit that the usual time required to go from Milwaukee to Washington does not exceed two days; that the time required to come from Pasadena, the residence of the defendant in Los Angeles county, California, to Milwaukee, does not exceed six days; and that the time required to travel between Pasadena and Washington does not exceed 11 days.

An affidavit made by the plaintiff stated that for 10 years prior to 1878 or 1879 the defendant was a resident of Milwaukee; that in one of the years named he changed his place of residence to the state of California; that prior to the service of the summons upon him in these cases congress had not been in session since March 4, 1885, and that the next session did not convene until December 7, 1885; that at the time of the service of the summons the defendant had more than abundant time to return from Milwaukee to his residence in California, and, after remaining there over two weeks, to start therefrom and arrive at Washington three weeks before the meeting of congress; that for at least seven days before the service of the summons, and until November 2, 1885, he was in Milwaukee visiting his friends and relatives, and, as the deponent was informed and believed, had spent some time in October hunting deer in the northern woods of this state; that the direct route from the defendant's residence in California to Washington does not include the city of Milwaukee. And it was alleged, upon information and belief, that at the time of the service of process upon the defendant, and for some time thereafter, he was traveling about and visiting sundry places before going to Washington to attend the session of congress; and that when he left Los Angeles with his family he did not intend to go direct to Washington, but intended to stop on his way at Milwaukee, to visit friends and relatives at that place.

Supplemental affidavits were filed after the argument of the motions. An affidavit of the defendant stated that when he left California with his family, his family physician deemed it hazardous on account of the tender years of the children to go from California to Washington without change and rest, and therefore advised stopping in Kansas and Wisconsin until about the first of November. He stated further that the shortest time for traveling from Pasadena to Washington is six days and six nights, and that owing to his own impaired health it was necessary for him to take every precaution to prevent sickness; that he remained in Topeka, Kansas, two days, leaving his wife and children with a relative there while he proceeded to Chicago, and, remaining there one day, he reached Milwaukee October 9th; that the following day he went to the hunting camp of his brother in the northern part of the state, intending to remain there until his family reached Chicago; that, owing to sickness and delay, his family did not reach Chicago till about October 21st, when he met them there, and on the following day took them to the residence of his brother in Milwaukee; that his two youngest children

were seriously ill, and remained so for several days, and that as soon as they recovered, and on November 2d, he and his family proceeded to Washington, where it was necessary for him to be at the earliest moment to get his family settled, and prepare for the work of the coming session.

The affidavits of R. B. Brown, a practicing physician in Milwaukee, stated in substance that he attended the family of the defendant professionally on the twenty-ninth, thirtieth, and thirty-first days of October, 1885; that two of the children were ill; that he was informed that they had been ill for several days; and he states that when he visited them they were too ill to travel, and ought not to have traveled in the condition they were in; that he advised the defendant not to leave Milwaukee until they were in better health; further, that the illness of said children did not appear to be serious, and that when he made his last visit he advised the defendant that in a few days the children would probably be well enough to proceed to Washington without material injury to their health.

The plaintiff also made a further affidavit in which he stated that he met the defendant in Milwaukee on the twenty-seventh day of October, 1885, and that the defendant made certain statements to him in relation to the health of his family, and also that he had been visiting and hunting with his brother a week or 10 days in northern Wisconsin. It was also alleged in the affidavit that on the twenty-sixth and twenty-seventh of October the defendant and his wife were visiting stores and shops in Milwaukee.

*Wells, Brigham & Upham,* for plaintiff.    (*James G. Jenkins,* of counsel.)

*Markham & Noyes,* for defendant.

DYER, J. Upon the presentation of facts thus made, the question to be decided is, was the defendant exempt from the service of civil process on him at the time the summons in each of these actions was served? Two propositions are involved in the consideration of this question: *First,* does the privilege from arrest specified in section 6, article 1, of the constitution of the United States include a privilege from the service of civil process? *Second,* if it does, to what extent in period of time, with reference to going to and returning from the discharge of public duty, may the privilege be invoked?

1. Section 6, art. 1, of the constitution of the United States provides that representatives "shall, in all cases, except treason, felony, and breach of the peace, be privileged from arrest during their attendance at the session of their respective houses, and *in going to and returning from the same.*"

In *Juneau Bank* v. *McSpedan,* 5 Biss. 64, it was held that a non-resident defendant, coming within a state for the purpose of defending his suit, cannot be legally served with process in another suit; and Judge MILLER, in the opinion, says: "In England the privilege

from arrest has always been construed to include the service of a summons. So in this country from an early period."

In *Atchison* v. *Morris*, 11 Biss. 191, S. C. 11 Fed. Rep. 582, Judge DRUMMOND, on a review of the cases, held, in accordance with the rule established in New York and Pennsylvania, that as to a witness the privilege extends to freedom from the service of civil process, and is not to be limited, as is held in some cases cited in the opinion, to freedom from arrest. It is observed by Judge DRUMMOND, in deciding the question before him, that in the federal courts the weight of authority seems to be in favor of a more liberal view of the subject than is taken in some of the state courts. See, also, *U. S.* v. *Bridgman*, 9 Biss. 221; *Brooks* v. *Farwell*, 4 Fed. Rep. 166.

In *Gyer's Lessee* v. *Irwin*, 4 Dall. 107, decided in 1790, it was held that "a member of the general assembly is undoubtedly privileged from arrest, summons, citation, or other civil process during his attendance on the public business confided to him."

In *Bolton* v. *Martin*, 1 Dall. 317, it was adjudged that a member of the state convention, which assembled in Philadelphia to consider the constitution of the United States, was privileged from the service of a summons or arrest during the session, and for a reasonable time before and after it. This decision was before the ratification of the constitution proposed for the government of the United States by the federal convention. The opinion of the court reviews the old law on the subject, and it is there said that "upon an attentive perusal of the statute of 12 & 13 Wm. III., no other authority will be wanting to show what the law was upon this subject before the passing of that act. From the whole frame of that statute it appears clearly to be the sense of the legislature that before that time members of parliament were privileged from arrests and from being served with any process out of the courts of law, not only during the sitting of parliament, but during the recess, within the time of privilege, which was a reasonable time *eundo* and *redeundo*." In the same case the court, referring to a citation from Blackstone's Commentaries, 165, to the effect that a member of parliament might be sued for his debts though not arrested, during the sitting of parliament, says:

"This will appear to be expressly confined to actions at the suit of the king under a particular provision in the statute of William III., and by the strongest implication shows that it could not be done at the suit of a private person."

Reference is then made to another passage from Blackstone, where he says:

"Neither can any member of either house be arrested or taken into custody, *nor served with any process of the courts of law,* * * * without a breach of the privilege of parliament."

. In a note to this case it is said that—

"In the case of *U. S.* v. *Edme*, 9 Serg. & R. 147, the court said that the privilege of protection ' has extended itself in process of time to every case

where the attendance was a duty in conducting any proceedings of a *judicial nature;*' and the case in the text shows that the privilege extends to protect all persons engaged in public business of a legislative character from the service of a *summons* as well as from *arrest.* To the same effect (in the case of suitors) is *Miles* v. *McCullough,* 1 Bin. 77."

In *Parker* v. *Hotchkiss,* 1 Wall. Jr. 269, it was held that a suitor in court residing without the circuit is privileged from the service of a summons; overruling the case of *Blight's Ex'r* v. *Fisher,* decided by Judge WASHINGTON in 1809, (1 Pet. C. C. 41,) in which this privilege was limited to exemption from arrest. *Parker* v. *Hotchkiss* was decided by Judge KANE, whose opinion was concurred in by Mr. Justice GRIER and Chief Justice TANEY.

In *Gentry* v. *Griffith,* 27 Tex. 461, it was decided that members of the legislature are not privileged against service of citation in civil suits by virtue of the provision in the constitution of the state granting an immunity from arrest to such members during the session of the legislature, and while going to and returning from the same.

In *Case* v. *Rorabacher,* 15 Mich. 537, it was held that there is no general exemption from the service of process without arrest, merely because a party is attending court awaiting the trial of a case. This case appears to be in antagonism to *Juneau Bank* v. *McSpedan, Brooks* v. *Farwell,* and *Parker* v. *Hotchkiss, ubi supra,* and to *Larned* v. *Griffin,* 12 Fed. Rep. 590, which is an instructive case in its collation of the authorities.

In *Doty* v. *Strong,* 1 Pin. 84, the question was whether the privilege from arrest guarantied by the constitution of the United States to members of congress extended to delegates from the territories; and if so, whether it was not only a privilege from arrest, but also from trial. The affirmative of both of these propositions was there adjudged, and the court, speaking by Mr. Justice MILLER, in passing upon the questions, uses this language:

"In order to render this provision [meaning section 6 of article 1 of the constitution of the United States] available to the extent of its necessity, it will not do to construe the words ' privilege from arrest' in a confined or literal sense. A liberal construction must be given to these words upon principle and reason. It is just as necessary for the protection of the rights of the people that their representative should be relieved from absenting himself from his public duties during the session of congress for the purpose of defending his private suits in court, as to be exempt from imprisonment on execution. If the people elect an indebted person to represent them, this construction of the constitution must also be made to protect his rights and interests, although it may operate to the prejudice of his creditors; but the claims of the people upon his personal attendance are paramount to those of individuals, and they must submit."

In *Anderson* v. *Rountree,* 1 Pin. 115, the subject was more thoroughly reviewed and considered, reference upon the question of privilege being made to 5 Bac. Abr. 618, Tidd, Pr. 257, and 1 Dunl. Pr. 92, and to the principal adjudged cases then extant, and it was held that the privilege from arrest secured to members of the legislative

assembly not only exempted their persons from actual arrest, but also from suit or any civil process which might interfere with their public duties during the continuance of their privilege.

Thus it will be seen that the decisions are not entirely harmonious upon the question of the extent of the privilege in question; but it has been the law in this jurisdiction from territorial times that the privilege in such a case as that at bar extends to exemption from civil process, with or without actual arrest; and in the absence of more authoritative exposition of the constitutional provision from the supreme court of the United States, I shall hold that under that provision, the defendant, as a member of the congress of the United States, was entitled to exemption from service of process upon him, although it was not accompanied with an arrest of his person, provided the privilege was in force at the time of such service.

2. This brings us to the second proposition involved, namely: Was the defendant, when served with process, "going to" the capital to attend a session of the house of which he was a member, within the meaning of the constitutional provision? No fixed time is prescribed by the constitution during which, before and after the close of the session, the privilege in question shall extend. The clause is: "During their attendance at the session of their respective houses, and in going to and returning from the same." It would be a superfluous task to go into all the old law on this subject as it once existed in England, when members of parliament were allowed prescribed periods of exemption from arrest, before and after sessions of parliament. An exhaustive review of the law, and of the English authorities, may be found in the case of *Hoppin* v. *Jenckes*, 8 R. I. 453, and nothing can be profitably added to what is there said on the subject. In Cushing's Law and Practice of Legislative Assemblies, at section 582, it is said:

"In the federal government, and in many states, members are privileged while going and returning merely, without other limitation of time. Where the duration of the privilege is thus stated, members are entitled to a reasonable, or as it was expressed by the house of commons, on occasion, a *convenient* time for going and returning. Thus they are not obliged at the close of the session to set out immediately on their return home, but may take a reasonable time to settle their private affairs, and prepare for the journey; nor will the privilege be forfeited by reason of some slight deviation from the most direct road."

The Manual of Parliamentary Practice, published by authority of the house of representatives in 1860, states the rule thus:

"The time necessary for going to and returning from congress not being defined, it will of course be judged of in every particular case by those who will have to decide the case. While privilege was understood in England to extend, as it does here, only to exemption from arrest, *eundo morando et redeundo,* the house of commons themselves decided that a convenient time was to be understood. 1 Hats. 99–100. Nor is the law so strict in point of time as to require the party to set out immediately on his return, but allows

him time to settle his private affairs, and to prepare for his journey, and does not even scan his road very nicely, nor forfeit his protection for a little deviation from that which is most direct, some necessity perhaps constraining him to do it. Str. 986–987."

Such, also, is in substance the language of Judge STORY, in his work on the Constitution, § 864. As a result of the authorities that bear on the question, it is held, in *Hoppin* v. *Jenckes, supra,* that the privilege from arrest of a member of congress is limited to the continuance of the session, and to a reasonable time for going and returning; and this is now the law in this country. What is a reasonable time for "going to and returning" from the seat of government must depend upon circumstances, and may be difficult to determine. The observations of Judge STORY, that the law does not scan the road which the member may take in his journey very nicely, nor forfeit his protection for a slight deviation from the route which is most direct, nor, it may be added, measure with precision the time absolutely necessary for going to or returning from the capital, furnish a just and sensible test in considering the question. To entitle the defendant to the privilege here invoked, he must have been in good faith on his way to the seat of government to enter upon the discharge of his public duties; that must have been the primary object of his journey. He must have left his residence in California with the intent of then going to Washington to take his seat in the congress to which he was elected, and the time taken for the journey must have been reasonable. He had a right, without forfeiture of his privilege, to set out from his residence at such time before the session should open as would enable him conveniently to establish his quarters, and settle his family and household affairs at the capital, and also, I think, to enable him to inform himself as a new member regarding pending legislation, so that he might enter advisedly upon the discharge of his duties. A slight deviation from the usual route for rest, convenience, or because of family sickness, ought not to cause a loss of his privilege, if such deviation was but an incident to the principal journey. Nor ought the duration of the privilege to be strictly measured by the exact number of days, with the present facilities for travel required for a journey from his residence in California to Washington. At the same time, his privilege could not and ought not to avail him if the deviation was equivalent to an abandonment of the original journey for purposes of pleasure or family visiting. If, when he left his home in California, his intention was to make a journey, not to Washington but to Milwaukee, there to spend an indefinite time visiting relatives, and then to go from Milwaukee to Washington after such prearranged delay at the former place as would still enable him to arrive at the capital in reasonable time to enter upon his public duties, so that it might be fairly said that the object of his journey at the time he set out upon it was not then to go to the capital, but elsewhere, it is clear that while in Milwaukee

he could not assert the constitutional privilege of exemption from arrest or service of process.

Applying these principles to the facts as here presented, I am of the opinion that the defendant was privileged from the service of process upon him in these cases. It is evident that when he set out with his family from Pasadena, his intended destination was Washington. The primary object of the journey was to go to the capital to prepare for and enter upon his duties as a member of congress. He had a right to exercise a reasonable judgment in connection with the settlement of his family in Washington, as to the time required for the accomplishment of his primary purpose, with its necessary incidents. It cannot be said from the facts shown that his destination was Milwaukee. It is evident that the health of his family to a large extent controlled his movements. Under the circumstances, his deviation from the direct route was not such as to justify an inference of abandonment of the original journey or its primary object. His privilege, in view of all the facts shown, ought not, I think, to be adjudged forfeited by such deviation, nor ought the court to measure with mathematical accuracy the days and hours required by the most rapid course of transit to travel from Pasadena to Washington. In short, the defendant was in good faith on his way to the seat of government to enter upon his public duties as a member elect of the forty-ninth congress when the process in these cases was served upon him. His deviation to Milwaukee was but an incident in the journey, and seems to have been occasioned by circumstances which made the deviation justifiable if not absolutely necessary. He was therefore entitled to the protection of his privilege.

The defendant, having appeared specially in the state court both in his motion to set aside the service of the summons in these cases and in his application for the removal of the cases to this court, and the motion made in the state court having been denied without prejudice to a renewal of the same, the defendant has not waived his privilege, and can assert it here with the same force and effect as if the suits had been brought and the motion made in this court in the first instance. *Atchison* v. *Morris, supra; Harkness* v. *Hyde,* 98 U. S. 476; *Sanderson* v. *Ohio Cent. R. & C. Co.,* 61 Wis. 609; S. C. 21 N. W. Rep. 818.

Motion to set aside the service of summons granted.